# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No.

JESSICA CAMPBELL,

    *Plaintiff*,

v.

DONALD TRUMP, President of the United States;
ERIC HARGAN, Acting Secretary of Health and Human Services;
R. ALEXANDER ACOSTA, Secretary of Labor; and
STEVEN MNUCHIN, Secretary of the Treasury, in their official capacities,

    *Defendants*.

---

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiff Jessica Campbell, through undersigned counsel, states the following Complaint for Declaratory and Injunctive Relief against Defendants:

### INTRODUCTION

1. On October 6, 2017, Defendant Donald Trump's Administration issued two Interim Final Rules ("IFRs") that violate the First Amendment to the U.S. Constitution, the Fifth Amendment to the Constitution, and Administrative Procedure Act. The Religious Exemption IFR[1] and the Moral Exemption IFR[2] discriminate against women by singling out and obstructing access to health care and insurance women use and is essential for women's health and equality.[3]

---

[1] "Religious Exemption IFR" refers to Interim Final Rules titled *Religious Exemptions and Accommodations for Coverage of Certain Preventive Services under the Affordable Care Act* issued by the Departments of the Treasury, Labor, and Health and Human Services, on Oct. 6, 2017, *available at* https://federalregister.gov/d/2017-21851.

[2] "Moral Exemption IFR" refers to Interim Final Rules titled *Moral Exemptions and Accommodations for Coverage of Certain Preventive Services under the Affordable Care Act* issued by the Departments of the Treasury, Labor, and Health and Human Services, on Oct. 6, 2017, *available at* https://federalregister.gov/d/2017-21852.

[3] This complaint uses the term "women" because cited data concerns women and women are targeted by the IFRs. However, some transgender and gender non-conforming people who do not identify as women are also harmed.

The Religious Exemption IFR also unconstitutionally promotes certain religious views at the expense of women. Both IFRs also violate the Administrative Procedure Act by foregoing notice and public comment without good cause and without providing proper basis for position change, violating federal statutory requirements, and exceeding statutory authority granted by Congress.

2. The IFRs jeopardize women's health and economic success in order to promote certain religious and moral views by attempting to nullify the right of equal access to preventive medical care, particularly contraceptive care and services, protected by the U.S. Constitution and set forth by Congress in the Women's Health Amendment to the Affordable Care Act ("ACA"). Specifically, the IFRs allow any entity, including for-profit companies, non-profits, universities, and others, not just churches or closely held corporations, to invoke religious or moral beliefs to unilaterally block employees from receiving contraception insurance coverage that they would otherwise be entitled to receive. The IFRs allow employers to dictate whether or not their women employees can reliably and affordably get contraception from their insurance provider. Thus, the IFRs facilitate discrimination against women based on religion and other grounds. In doing so, the IFRs violate the Establishment Clause of First Amendment, equal protection guarantees of the Fifth Amendment and various statutes, due process, and right to reproductive freedom.

3. Ms. Jessica Campbell ("Ms. Campbell" or "Plaintiff") is a 30-year-old Colorado resident and private school teacher who receives health insurance coverage through Colorado Academy's health insurance plan, and relies on her insurance plan for all of her healthcare needs. She uses hormonal birth control for medically necessary health and safety reasons, including prevention of formation of ovarian cysts. She also uses contraception to prevent unintended pregnancy, which is foundational to her financial security, liberty, and reproductive freedom. She brings this action on behalf of herself and other women whose basic rights are being violated.

## JURISDICTION AND VENUE

4. This action arises under the First and Fifth Amendments to the United States Constitution, and the Administrative Procedure Act, and presents a federal question within this Court's jurisdiction under Article III of the Constitution and 28 U.S.C. §§ 1331, 1346, and 1361.

5. Plaintiff's claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201 and 2202, 5 U.S.C. § 702, and Federal Rules of Civil Procedure 57 and 65, and inherent equitable powers of this Court. Defendants' sovereign immunity is waived under 5 U.S.C. § 702.

6. Venue is proper in this district under 28 U.S.C. § 1391 and 5 U.S.C. § 703.

## PARTIES

### A. Plaintiff Jessica Campbell

7. Plaintiff Jessica Campbell is a 30-year-old resident of Colorado. Ms. Campbell grew up in Greeley, graduated from the University of Denver, and has been a teacher for 9 years. Ms. Campbell currently teaches middle school math at Colorado Academy, a private school.

8. Ms. Campbell receives health insurance coverage through Colorado Academy's health insurance plan, and relies on her employer-based insurance plan for all of her healthcare needs. She uses hormonal birth control for non-contraceptive, medically necessary, health and safety needs, including prevention of ovarian cysts. Ms. Campbell has a history of ovarian cysts.

9. Ms. Campbell's health and safety depend on continued ability to access reliable and affordable birth control through her ACA-regulated, employer-based health insurance plan.

10. Like millions of other Americans, Ms. Campbell also uses hormonal birth control for contraceptive purposes, namely preventing unintended pregnancy, and related health needs.

11. In addition to health and safety, Ms. Campbell's financial security, liberty, and reproductive freedom, depend on her continued access to reliable and affordable birth control.

**B. Defendants**

12. Defendant Donald Trump is the President of the United States. On May 4, 2017, he issued Executive Order 13798,[4] which directed Defendants to issue the new rules which are challenged by this lawsuit as unconstitutional and illegal. He is sued in his official capacity.

13. Defendant Eric Hargan is the Acting Secretary of the U.S. Department of Health and Human Services ("HHS"), an agency responsible for implementing and enforcing material portions of the ACA and an issuer of the challenged IFRs. He is sued in his official capacity.

14. Defendant R. Alexander Acosta is the Secretary of the U.S. Department of Labor ("Labor"), an agency responsible for implementing and enforcing material portions of the ACA and one of the agencies that issued the challenged IFRs. He is sued in his official capacity.

15. Defendant Steven Mnuchin is Secretary of the U.S. Department of the Treasury ("Treasury"), an agency responsible for implementing and enforcing material portions of the ACA and one of the agencies that issued the challenged IFRs. He is sued in his official capacity.

**STATEMENT OF FACTS**

**A.     The Affordable Care Act and Women's Health Amendment**

16. The Affordable Care Act, enacted by Congress in 2010, requires health insurance plans to cover certain preventive services without cost-sharing. Patient Protection and Affordable Care Act, Pub. L. 111-148, sec. 1001, § 2713(a) (2010) (codified at 42 U.S.C. § 300gg-13).

17. During debate over the ACA, Congress adopted the Women's Health Amendment to ensure such services included preventive care unique to women. 42 U.S.C. § 300gg-13(a)(4).

18. Sen. Barbara Feinstein noted, "Often those things unique to women have not been included in health care reform. Today we guarantee it and we assure it and we make it affordable by dealing with copayments and deductibles. . . ." 155 Cong. Rec. 288 S11,979, S11,988 (2009).

---

[4] Executive Order 13798 is *available at* https://www.gpo.gov/fdsys/pkg/FR-2017-05-09/pdf/2017-09574.pdf.

19. The Women's Health Amendment relied on expert rigorously reviewed guidelines developed by the independent, nonpartisan Institute of Medicine ("IOM"), and adopted by HHS, to determine what should be included in no-cost "preventive care" coverage for women to ensure "essential protections for women's access to preventive healthcare." 42 U.S.C. § 300gg-13(a)(4).

20. The IOM recommended that private health insurance plans be required to cover all contraceptive benefits and services approved by the Food and Drug Administration ("FDA") without cost-sharing, noting a wage gap and that "many women do not have insurance coverage or are in health plans in which copayments for visits and for prescriptions have increased in recent years." IOM, *Clinical Preventive Services for Women: Closing the Gaps* 109-110 (2011).

21. Following the IOM's recommendations relating to contraceptive coverage, HHS, Labor, and Treasury promulgated regulations requiring group health insurance plans to cover all FDA-approved contraceptive methods without cost to women and covered dependents. 45 C.F.R. § 147.130(a)(1)(iv); 29 C.F.R. § 2590.715-2713(a)(1)(iv); 26 C.F.R. § 54.9815-2713(a)(1)(iv). HHS noted that lack of access "places women in the workforce at a disadvantage," "access to contraception improves . . . status," and aim to reduce "disparities by providing women broad access to preventive services, including contraceptive services." 77 Fed. Reg. 8725, 8728 (2012).

22. In implementing this statutory scheme, HHS made available to group health plans a religious accommodation that allowed religious employers and closely held corporations to opt out of providing or paying for contraception while ensuring women's coverage access per ACA. 26 C.F.R. § 54.9815-2713A; *see Burwell v. Hobby Lobby Stores, Inc.*, 134 S. Ct. 2751 (2014).

23. HHS updated the guidelines on Dec. 20, 2016, and included continued coverage of all FDA-approved contraceptive methods and services, without cost-sharing, highlighting the government's recognition of the high importance of contraceptive care and insurance to women.

**B.     Executive Order 13798**

24.     On January 20, 2017, Donald Trump was inaugurated as President. During the campaign, evidence surfaced that he had made vulgar, derogatory comments about women.[5] On May 4, 2017, President Trump issued Executive Order 13798, which directed Treasury, Labor, and HHS to "consider issuing amended regulations, consistent with applicable law, to address conscience-based objections to the preventive-care mandate promulgated under section 300gg–13(a)(4) of title 42, United States Code." Under the express terms of the Executive Order, any such regulations were required to comply with the ACA, other statutes, and the Constitution.

**C.     Interim Final Rules**

25.     On Oct. 6, 2017, Treasury, Labor, and HHS issued two interim final rules that allow any entity, including for-profit companies, non-profits, universities, and others, not just churches or closely held corporations, to invoke religious or moral beliefs to unilaterally block employees from receiving contraception insurance coverage they would otherwise be entitled to receive under the ACA and other laws. The IFRs allow employers to dictate whether or not their women employees can access contraception from their insurance provider, without cost-sharing.

26.     The IFRs, which substantially expand employer ability to opt-out of providing contraceptive coverage per ACA, were promulgated without any notice, opportunity to comment, or evidence-based expert guidance, and fail to address fact-finding supporting prior regulations. The IFRs go beyond religious employers and closely held corporations (already accommodated), making optional accommodation and reducing access to essential care used by 99% of women.[6]

27.     The IFRs fail to ensure Plaintiff, or other women, access to required coverage. As such, Plaintiff is extremely vulnerable to substantial health, safety, economic, and social harms

---

[5] *See* N.Y. Times, Oct. 8, 2016, *at* https://www.nytimes.com/2016/10/08/us/donald-trump-tape-transcript.html.
[6] Kimberly Daniels, et al., *Contraceptive Methods Women Have Ever Used: United States, 1982-2010*, National Health Statistics Reports No. 62, 1 (Feb. 14, 2013), https://www.cdc.gov/nchs/data/nhsr/nhsr062.pdf.

from loss of access to essential contraceptive care and coverage, and requests immediate relief.

## CLAIMS FOR RELIEF

## COUNT ONE

## FIRST AMENDMENT — ESTABLISHMENT CLAUSE

28. Plaintiff incorporates Paragraphs 1 through 27.

29. The First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." U.S. Const., amend. I. The Establishment Clause specifically means that "the government may not favor one religion over another, or religion over irreligion." *McCreary County, Kentucky v. ACLU*, 545 U.S. 844, 875 (2005). "The clearest command of the Establishment Clause is that one religious denomination cannot be officially preferred over another." *Larson v. Valente*, 456 U.S. 228, 244 (1982).

30. The IFRs privilege religious beliefs over secular beliefs as a basis for obtaining exemptions under the ACA, and allow employers veto power over women's rights. Defendants have used their rulemaking authority for the primary purpose, and with the principal effect, of advancing and endorsing religious views. In contrast, prior regulations only allowed exemptions for religious employers, and accommodations for closely held corporations. This was narrowly tailored to accommodate religious beliefs while ensuring that women continued to receive their legally required contraceptive care and coverage as Congress intended by adopting the ACA.

31. By promulgating the IFRs, Defendants have violated the Establishment Clause because the IFRs promote certain religious views by accommodating any employer's religious objections to contraception, while placing an undue burden on third parties – women who seek birth control, including Plaintiff – that is not narrowly tailored and ignores the clearly compelling interest of Plaintiff and other women in cost-free access to contraceptive care and coverage.

7

32. Plaintiff is directly harmed by Defendants' violations of the First Amendment.

33. Defendants' violations cause ongoing harm to the Plaintiff.

## COUNT TWO

## FIFTH AMENDMENT – EQUAL PROTECTION

34. Plaintiff incorporates Paragraphs 1 through 33.

35. The due process clause and equal protection guarantee of the Fifth Amendment prohibits the federal government, including Defendants, from denying equal protection of the laws. U.S. Const., amend. V. Targeted, unfavorable treatment, based on improper animus or purpose, as here, runs afoul of the Constitution. "In determining whether a law is motivated by an improper animus or purpose, '[d]iscriminations of an unusual character' especially require careful consideration." *United States v. Windsor*, 133 S. Ct. 2675, 2693 (2013). In this case, Defendants clearly single out women's contraceptive coverage for unconstitutional treatment.

36. The Religious Exemption IFR and Moral Exemption IFR, together with statements made by Defendants concerning intent and application, target women for unfavorable and discriminatory treatment based on their gender, without lawful justification. The IFRs impermissibly target women for adverse treatment and harm the Plaintiff and other women.

37. The IFRs insert a gender-based classification into the ACA's preventive care provisions by selectively authorizing employers to use their religious beliefs to deny essential health insurance coverage for women, with foreseeable, devastating effects to women's health.

38. In issuing the IFRs, Defendants intentionally and purposefully singled out and discriminated against Plaintiff and similarly situated women on the basis of their gender.

39. The amendments to the regulations undermine protections inserted into the ACA by Congress for the clear purpose of guaranteeing women equal access to preventive medicine.

Congress sought to rectify gender cost disparities by giving women cost-free preventive services.

40. The IFRs will result in women losing access to medically necessary contraceptive care and coverage while leaving coverage for men unchanged. They do not serve a compelling government interest sufficient to justify the gender-based discrimination and disparate treatment.

41. By issuing the IFRs, Defendants have violated the Fifth Amendment's due process clause and equal protection guarantee.

42. Plaintiff is directly harmed by Defendants' violations of the Fifth Amendment.

43. Defendants' violations cause ongoing harm to the Plaintiff.

## COUNT THREE

## ADMINISTRATIVE PROCEDURE ACT

44. Plaintiff incorporates Paragraphs 1 through 43.

45. The Administrative Procedure Act ("APA") provides a cause of action for parties adversely affected or aggrieved by agency action for which there is no other adequate remedy in court. 5 U.S.C. § 702-704. A reviewing court shall "hold unlawful and set aside agency action" that is "without observance of procedure required by law." 5 U.S.C. § 706.

46. The APA requires an agency to give a "general notice of proposed rulemaking" and give "interested persons an opportunity to participate in the rule making through submission of written data, views, or arguments with or without opportunity for oral presentation," unless the agency shows "good cause" that it is "impracticable, unnecessary, or contrary to the public interest." 5 U.S.C. § 553. Defendants have not and cannot demonstrate good cause for failing to give any notice to the public or allowing for public comment prior to effectuating the new IFRs.

47. A reviewing court shall also "hold unlawful and set aside agency action" that is "(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (B)

9

contrary to constitutional right, power, privilege, or immunity; (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706. By effectuating IFRs without proper factual or legal basis, Defendants have acted in an arbitrary and capricious fashion, abused their discretion, acted not in accordance with law, taken unconstitutional action, and exceeded statutory authority. The IFRs are inconsistent with Constitutional rights of Plaintiff and other women, and federal laws including ACA and Title VII of the Civil Rights Act of 1964.

48. Plaintiff is directly harmed by Defendants' violations of APA and other laws.

49. Defendants' violations cause ongoing harm to the Plaintiff.

## COUNT FOUR

## DECLARATORY RELIEF

50. Plaintiff incorporates Paragraphs 1 through 49.

51. The above facts and claims constitute a case and controversy, and 28 U.S.C. § 2201 *et seq.*, authorizes the Court to enter declaratory relief against Defendants on these claims.

52. Plaintiffs are entitled to a Declaratory Judgment that Defendants, in issuing and enforcing the IFRs, violated the Constitution, the laws, and Plaintiff's rights, as set forth above.

53. Plaintiff is entitled to a speedy hearing under Federal Rule of Civil Procedure 57.

54. Defendants' violations cause ongoing harm to the Plaintiff, bringing substantial likelihood of immediate and future irreparable harm due to the medical need and constitutional right of Plaintiff and similarly situated women to contraceptive care and coverage essential to women's health, safety, and equality. Irreparable harm is established "when the court would be unable to grant an effective monetary remedy after a full trial because such damages would be inadequate or difficult to ascertain." *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 269 F.3d 1149, 1156 (10th Cir. 2001); *see also RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1210

(10th Cir. 2009). "When an alleged constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." *Fish v. Kobach*, 840 F.3d 710, 752 (10th Cir. 2016). "The Supreme Court has explained that 'loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury[.]'" *Fish*, 840 F.3d at 752 (citing *Elrod v. Burns*, 427 U.S. 347 (1976)). Plaintiff, here, is entitled to constitutional relief.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays that this Court grant the following relief:

1. Hold a speedy hearing under Fed. R. Civ. P. 57 on her declaratory relief claim;

2. Issue a declaration that the IFRs violate the Constitution of the United States;

3. Issue a declaration that the IFRs violate various federal laws of the United States;

4. Issue a declaration that the IFRs are void for violating requirements of the APA;

5. Issue a preliminary and permanent injunction barring enforcement of the IFRs;

6. Award Plaintiff reasonable costs and attorneys' fees as allowed by law; and

7. Award such other and further relief as this Court deems just and proper.

Dated: October 13, 2017

By: /s/ *Alan Kennedy-Shaffer*
Alan Kennedy-Shaffer, Esquire
1975 N. Grant Street, # 421
Denver, CO 80203
(303) 345-3397
alan.kennedy-shaffer@aya.yale.edu

By: /s/ *Joel Judd*
Joel Judd, Esquire
2222 S Albion Street, # 100
Denver, CO 80222
(303) 830-8881
joeljudd@joeljudd.com

**ATTORNEYS FOR PLAINTIFF**

# CERTIFICATE OF SERVICE

I hereby certify that on this day, October 13, 2017, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following email addresses:

    alan.kennedy-shaffer@aya.yale.edu    (Representing *Plaintiff*)
    joeljudd@joeljudd.com    (Representing *Plaintiff*)

I hereby certify that on this day, October 13, 2017, I mailed or served the foregoing document to the following Defendants and other recipients via U.S.P.S. Certified Mail (with return receipt):

    DONALD TRUMP, President of the United States
    1600 Pennsylvania Ave NW, Washington, DC 20500

    ERIC HARGAN, Acting Secretary of Health and Human Services
    200 Independence Avenue, S.W., Washington, D.C. 20201

    R. ALEXANDER ACOSTA, Acting Secretary of Health and Human Services
    200 Constitution Ave. NW, Washington DC 20210

    STEVEN MNUCHIN, Secretary of the Treasury
    1500 Pennsylvania Avenue, NW, Washington, D.C. 20220

    JEFF SESSIONS, Attorney General of the United States
    950 Pennsylvania Avenue, NW, Washington, DC 20530

    BOB TROYER, Acting U.S. Attorney for the District of Colorado
    1801 California Street, Suite 1600, Denver, CO 80202

Dated: October 13, 2017

    By: /s/ *Alan Kennedy-Shaffer*
    Alan Kennedy-Shaffer, Esquire
    1975 N. Grant Street, # 421
    Denver, CO 80203
    (303) 345-3397
    alan.kennedy-shaffer@aya.yale.edu

    Joel Judd, Esquire
    2222 S Albion Street, # 100
    Denver, CO 80222
    (303) 830-8881
    joeljudd@joeljudd.com

    **ATTORNEYS FOR PLAINTIFF**