# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 17-cv-2455-PAB-KHR

JESSICA CAMPBELL,

    Plaintiff,

v.

DONALD J. TRUMP, President of the United States;
ERIC D. HARGAN, Acting Secretary of Health and Human Services;
R. ALEXANDER ACOSTA, Secretary of Labor; and
STEVEN MNUCHIN, Secretary of the Treasury,

    Defendants.

---

## DEFENDANTS' MOTION TO DISMISS

---

Defendants respectfully move this Court to dismiss Plaintiff's complaint for lack of jurisdiction because she lacks standing.[1] For their motion, Defendants state the following:

## INTRODUCTION

This case concerns a plaintiff's challenge to agency regulations that are unlikely to affect her. In 2010, as part of the Affordable Care Act (ACA), Congress enacted a provision requiring employers to cover some recommended preventive services for women without cost-sharing. The Health Resources and Services Administration (HRSA), an agency within the Department of Health and Human Services (HHS), implemented the provision by issuing guidelines in 2011 that

---

[1] In response to Civil Practice Standard F.2.i, Defendants seek the dismissal of all claims of the Complaint because Plaintiff fails to allege standing for any claim.

required coverage for women of all Food and Drug Administration (FDA)-approved contraceptives without cost-sharing—also known as the contraceptive mandate. At the same time, the government recognized that some employers hold sincere religious objections to providing coverage for contraception, and exempted certain employers from that mandate.

Years of litigation ensued. In October 2017, in an effort to address serious religious and moral objections and finally bring the litigation to a close, the Departments of Health and Human Services, Labor, and the Treasury (Agencies) issued interim final rules (IFRs) that keep the contraceptive mandate in place, but exempt religious and moral objectors from having to include contraceptive coverage in insurance plans offered to their employees or students. *See* Religious Exemptions and Accommodations for Coverage of Certain Preventive Services Under the ACA, 82 Fed. Reg. 47,792 (Oct. 13, 2017) (Religious Exemption Rule); Moral Exemptions and Accommodations for Coverage of Certain Preventive Services Under the ACA, 82 Fed. Reg. 47,838 (Oct. 13, 2017) (Moral Exemption Rule) (collectively, Rules).

Plaintiff, Ms. Jessica Campbell, resides in Colorado and uses contraception. Compl. ¶ 3. She receives health insurance through her employer, Colorado Academy. Compl. ¶¶ 7-8. She has not alleged that her employer has a sincerely held religious or moral objection to covering contraception, or that it qualifies for the Rules' exemptions. Indeed, her employer has stated that it has no plans to change its health insurance coverage. Nevertheless, Ms. Campbell alleges she may someday be harmed by the Rules, apparently because she fears that she might someday be deprived of coverage for contraception. On that basis, Ms. Campbell seeks declaratory and injunctive relief from this Court.

This Court lacks jurisdiction over this lawsuit because Ms. Campbell identifies only a

speculative possibility that she will ever be injured. Accordingly, Ms. Campbell lacks Article III standing—she has no current injury and cannot show that any potential future injury is certainly impending. In addition, Ms. Campbell's claims are unripe. Defendants therefore respectfully ask this Court to dismiss Ms. Campbell's complaint for lack of jurisdiction.

## BACKGROUND

The contraceptive mandate arises from agency regulations issued under the authority of the ACA. Patient Protection and Affordable Care Act (PPACA), Pub. L. No. 111–148, 124 Stat. 119 (2010), *as amended by* Pub. L. No. 111–152, 124 Stat. 1029 (2010). The ACA does not specifically refer to contraception, but requires group health plans and health insurance issuers that offer group or individual health coverage to cover, "with respect to women, such additional preventive care and screenings not described in [§ 300gg-13(a)(1)] as provided for in comprehensive guidelines supported by the Health Resources and Services Administration [HRSA]."[2] 42 U.S.C. § 300gg-13(a)(4). In 2010, the Agencies issued a set of IFRs to begin the process of implementing the preventive services requirements. 75 Fed. Reg. 34,537, 34,540 (June 17, 2010). HRSA adopted guidelines that defined the covered preventive services to include, among other things, the full range of FDA-approved contraceptive methods, sterilization procedures, and patient education and counseling for women with reproductive capacity. *See*

---

[2] This mandate has never been universally applicable—Congress exempted many "grandfathered" health insurance plans, covering tens of millions of employees, from the preventive services provision. *See* 26 C.F.R. § 54.9815–1251(a); 29 C.F.R. § 2590.715–1251(a); 45 C.F.R. § 147.140(a). Notably, Congress did *not* exempt grandfathered plans from certain "particularly significant" services, including coverage of preexisting conditions. 75 Fed. Reg. 34,538, 34,540 (June 17, 2010).

HRSA, Women's Preventive Services: Required Health Plan Coverage Guidelines (Guidelines), http://www.hrsa.gov/womens-guidelines.

Since the ACA's enactment, the Agencies have consistently sought to accommodate religious objections to the contraceptive mandate. In 2011, the Agencies issued IFRs exempting certain religious employers, *see* Group Health Plans and Health Insurance Issuers Relating to Coverage of Preventive Services Under the PPACA, 76 Fed. Reg. 46,621, 46,623-25 (Aug. 3, 2011), and creating a limited safe-harbor for other non-profit organizations, HHS, Guidance on the Temporary Enforcement Safe Harbor, at 1 n.1 & 3 (Feb. 10, 2012), https://go.usa.gov/xnZBN. After considering thousands of comments, the Agencies issued final regulations that adopted the IFRs' definition of a religious employer. 77 Fed. Reg. 8,725, 8,726–27 (Feb. 15, 2012).

Dozens of organizations and individuals filed lawsuits seeking a broader exemption, alleging that the contraceptive mandate violated their rights under the Religious Freedom Restoration Act (RFRA). *See Archdiocese of St. Louis v. Burwell*, 28 F. Supp. 3d 944, 954 (E.D. Mo. 2014) (citing cases). In many of these lawsuits, courts enjoined enforcement of the contraceptive mandate. To resolve these religious objections, the Agencies engaged in notice-and-comment rulemaking, and, in 2013, they issued new final rules broadening the definition of a religious employer. 78 Fed. Reg. 39,870, 39,889, 39,896 (July 2, 2013). The 2013 final rules also established an accommodation process by which group health plans established or maintained by eligible organizations could self-certify their objections to their issuers or third-party administrators (TPAs), and the issuer or TPA would then independently arrange for the provision of contraceptive services without cost sharing. *Id.* at 39,874–80, 39,896.

However, the 2013 final rules did not resolve the litigation challenging the contraceptive

mandate. In 2014, the Supreme Court held that the contraceptive mandate violated RFRA as applied to closely-held for-profit corporations with sincere religious objections to providing contraceptive coverage. *Burwell v. Hobby Lobby*, 134 S. Ct. 2751, 2775 (2014). The Supreme Court did not rule in *Hobby Lobby* on whether the accommodation process satisfied the government's obligations under RFRA toward those with religious objections to that process. Just one week later, in *Wheaton College*, the Supreme Court identified an alternative form of accommodation that did not require the employer to notify its insurer or TPA. *See Wheaton Coll. v. Burwell*, 134 S. Ct. 2806, 2807-08 (2014). In light of these developments, the Agencies issued a third set of IFRs, along with a notice of proposed rulemaking, both of which they later finalized by rule. Coverage of Certain Preventive Services Under the ACA, 79 Fed. Reg. 51,092 (Aug. 27, 2014); 79 Fed. Reg. 51,118 (Aug. 27, 2014); 80 Fed. Reg. 41,318, 41,324 (July 14, 2015).

Still, litigation continued, and the Supreme Court granted certiorari in *Zubik v. Burwell* to consider whether the accommodation process satisfied the government's RFRA obligations toward non-profit religious entities with sincere religious objections to that process. 136 S. Ct. 1557 (2016). The Supreme Court vacated and remanded without resolving the issue, hoping that the parties could "resolve any outstanding issues between them" "[i]n light of the . . . substantial clarification and refinement in the positions of the parties." *Id.* at 1560. But, after considering over 54,000 public comments on options for modifying the accommodation process, the Agencies were unable to find a way to amend the accommodation to satisfy all objecting organizations while pursuing the Agency's policy goals. *See* FAQs About ACA Implementation Part 36 (Jan. 9, 2017), https://dol.gov/sites/default/files/ebsa/about-ebsa/our-activities/resource-center/faqs/aca-part-36.pdf. Thus, the litigation on remand after *Zubik*—involving dozens of cases and dozens of

plaintiffs—remained unresolved.

On May 4, 2017, the President issued an "Executive Order Promoting Free Speech and Religious Liberty," Exec. Order No. 13,798, 82 Fed. Reg. 21,675 (May 4, 2017), instructing the Agencies to "consider issuing amended regulations, consistent with applicable law, to address conscience-based objections to the preventive-care mandate promulgated under section 300gg-13(a)(4)." Consistent with the Order, the Agencies "reexamine[d] the exemption and accommodation scheme currently in place for the Mandate," and issued the Rules at issue here on October 6, 2017, requesting public comments by December 5, 2017.[3] Religious Exemption Rule, 82 Fed. Reg. at 47,799; *accord* Moral Exemption Rule, 82 Fed. Reg. 47,838.

The Religious Exemption Rule expands the exemption for non-governmental plan sponsors that object to providing coverage for all or a subset of contraceptive services based on their sincerely held religious beliefs. 45 C.F.R. § 147.132(a)(2). The Moral Exemption Rule exempts certain non-governmental plan sponsors that object to providing all or a subset of contraceptive services based on sincerely held moral convictions.[4] *Id.* § 147.133(a)(2). As under the previous rule, exempt entities are not required to self-certify, but remain subject to regulatory disclosure requirements for plan exclusions or reductions in a covered benefit. 82 Fed. Reg. at 47,808 & n.54; *id.* at 47,804 & n.32. The Rules maintain the accommodation process as an optional

---

[3] A court in the Eastern District of Pennsylvania recently enjoined the Agencies from enforcing the Rules, *see* Order, *Pennsylvania v. Trump*, No. 17-cv-4540 (E.D. Pa. Dec. 15, 2017), ECF No. 60, however, that injunction is not relevant to this motion.

[4] Each rule also includes an expanded exemption for institutions of higher education, 45 C.F.R. § 147.132(a)(2), § 147.133(a)(2), and an option for plans to offer certain separate coverage to individuals with sincerely held religious or moral objections to contraceptive coverage, 45 C.F.R. §§ 147.132(b), 147.133(b).

mechanism to provide contraceptive coverage for women covered by the plans of exempt entities that choose to use it.  45 C.F.R. § 147.131; 26 C.F.R § 54.9815-2713A; 29 C.F.R. § 2590.715-2713A.  On October 6, 2017, HRSA updated its Guidelines to exempt entities and individuals that qualify for exemptions from the Guidelines' requirements.  *See* Guidelines.

## STANDARD OF REVIEW

"The federal courts are courts of limited subject-matter jurisdiction."  *Gad v. Kansas State Univ.*, 787 F.3d 1032, 1035 (10th Cir. 2015), remanded to No. 12-2375, 2016 WL 74399 (D. Kan. Jan. 6, 2016); *cf.* Fed. R. Civ. P. 12(b)(1) (requiring dismissal of a complaint where the court lacks subject matter jurisdiction).  Federal courts "presume" that they lack jurisdiction "unless the contrary appears affirmatively from the record," *Infant Swimming Research, Inc. v. Faegre & Benson, LLP*, 335 F. App'x 707, 713 (10th Cir. 2009) (quoting *Renne v. Geary*, 501 U.S. 312, 316 (1991)), and the plaintiff bears the burden of establishing jurisdiction, *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).  In evaluating a motion to dismiss, the court accepts as true the allegations of the complaint and "construe[s] the complaint in favor of the complaining party."  *S. Utah Wilderness All. v. Palma*, 707 F.3d 1143, 1152 (10th Cir. 2013) (quoting *Warth v. Seldin*, 422 U.S. 490, 501 (1975)).

## ARGUMENT

This Court lacks jurisdiction both because Ms. Campbell lacks standing to pursue her claims and because her claims, if an injury existed, are unripe.

### 1. The Court Should Dismiss This Case Because Plaintiff Lacks Standing.

The Supreme Court articulated the "irreducible constitutional minimum" for Article III standing in *Lujan v. Defenders of Wildlife*:

> First, the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical[.] Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly trace[able] to the challenged action of the defendant. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

504 U.S. 555, 560 (1992) (internal quotation marks and citations omitted).

These Article III standing requirements ensure that legal questions are "resolved, not in the rarified atmosphere of a debating society, but in a concrete factual context conducive to a realistic appreciation of the consequences of judicial action." *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 472 (1982); *cf. Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013) ("No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies."). Because standing reflects separation-of-powers concerns, the inquiry is "especially rigorous" where, as here, a plaintiff asks a federal court "to decide whether an action taken by one of the other two branches of the Federal Government was unconstitutional." *Raines v. Byrd*, 521 U.S. 811, 819-20 (1997).

Ms. Campbell has not shown an injury-in-fact. She does not allege any actual or present harm from the Rules. Absent any concrete allegation of present harm, all that remains is her speculative implication that her employer might, at an unknown point in the future, take advantage of the new exemptions without utilizing the accommodation, based on the employer adopting an exemption that it apparently does not espouse, with no reason to believe it will adopt that objection. And that possibility is too attenuated to support standing.

    A. <u>The Theoretical Possibility That Ms. Campbell Might Someday Lose Coverage Is Too Speculative to Establish Standing.</u>

8

Ms. Campbell describes no current injury and appears satisfied with her current health insurance coverage. *See, e.g.*, Compl. ¶ 3 ("Ms. Jessica Campbell . . . receives health insurance coverage through Colorado Academy's health insurance plan, and relies on her insurance plan for all of her healthcare needs. She uses hormonal birth control . . . ."); *accord* Compl. ¶¶ 9, 11.

Nor does Ms. Campbell ever allege that her employer *will* change her health insurance coverage. Instead, she implies that the new Rules *could* enable such a potential change. *See, e.g.*, Compl. ¶ 27 ("The IFRs fail to ensure Plaintiff, or other women, access to required coverage. As such, Plaintiff is extremely vulnerable to substantial health, safety, economic, and social harms from loss of access to essential contraceptive care and coverage . . . ."). However, such hints and speculation are a far cry from the requirements of Article III.

A potential future injury satisfies Article III only if it is "actual and imminent, not conjectural or hypothetical." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009). In other words, the injury must be "*certainly* impending"—"'[a]llegations of *possible* future injury' are not sufficient.'" *Clapper*, 568 U.S. at 409 (citation omitted); *see also Lujan*, 504 U.S. at 564 n.2 (holding that a plaintiff who "alleges only an injury at some indefinite future time" has not shown an injury in fact; "the injury [must] proceed with a high degree of immediacy, so as to reduce the possibility of deciding a case in which no injury would have occurred at all").

Ms. Campbell's theoretical fear that her employer might someday decide to change its health insurance is precisely the "possible future injury" that is insufficient to establish standing. Ms. Campbell does not allege that her employer holds the sort of sincerely held religious or moral objections to covering contraception that would render it eligible for the Rules' exemptions. Moreover, she identifies no intent, plan, or schedule to change her health insurance. Indeed, her

employer has publicly stated it anticipates no changes.[5]  *See* Kirk Mitchell, *Denver Teacher Sues Trump Claiming Contraception Rules Violate Women's Rights*, Denver Post (Oct. 13, 2017), http://www.denverpost.com/2017/10/13/denver-teacher-sues-trump-contraception-rules (Colorado Academy's head of school stated that the health benefits provided by the school, including contraception, "have not changed, and there are no plans to change those benefits"), attached as Ex. A.  In addition, if Ms. Campbell's employer *did* decide to change its benefits, it would have to provide its health plan members with either 30 or 60 days' notice.  *See* 82 Fed. Reg. at 47,813.

The Tenth Circuit has repeatedly recognized that such vague worries about the future are insufficient to support standing—indeed, a "plaintiff may not merely allege it can imagine circumstances in which it could be affected by the agency action." *Committee to Save the Rio Hondo v. Lucero*, 102 F.3d 445, 449 (10th Cir. 1996).  For example, in *Colorado Outfitters*, a plaintiff sought to challenge a state law banning the transfer or acquisition of large-capacity gun magazines.  *Colo. Outfitters Ass'n v. Hickenlooper*, 823 F.3d 537, 542, 550-51 (10th Cir. 2016).  One of the plaintiff's members already possessed such magazines (and was permitted to retain them under the new law), but feared that the magazines might wear out or be lost in the future, at which point the law would prohibit replacement.  *Id.* at 550-51.  The Tenth Circuit held "[s]uch

---

[5] Defendants raise primarily a facial challenge because Ms. Campbell fails to allege any injury in fact within the four corners of her Complaint.  In the alternative, Defendants note that factual material beyond the complaint indicates that Ms. Campbell's employer intends to preserve its coverage of contraceptives.  To resolve the jurisdictional fact of whether Ms. Campbell's employer intends to change its coverage, the Court need not convert this motion into one for summary judgment.  *See Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995) ("A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1). In such instances, a court's reference to evidence outside the pleadings does not convert the motion to a Rule 56 motion." (citations omitted)).

'some day' speculations are insufficient to establish an injury-in-fact for purposes of Article III standing." *Id.* at 551. Here, Ms. Campbell is apparently satisfied with her current contraceptive coverage, and—like the plaintiff in *Colorado Outfitters*—can offer nothing more than a "some day" speculation that those benefits would ever change. *See also e.g.*, *Cunningham v. Birch*, No. 16-CV-02353-NYW, 2017 WL 1243020, at *6 (D. Colo. Feb. 17, 2017) (finding that a plaintiff lacked standing where he had not submitted an application for a Medicaid benefit, but presented evidence that an application would be rejected, because a plaintiff must "do something more than simply predict that the actions of the executive will harm him").

Ms. Campbell's complaint contains the bare statements that "Defendants' violations cause ongoing harm to the Plaintiff." Compl. ¶ 49; *see also* Compl. ¶ 54 ("Defendants' violations cause ongoing harm to the Plaintiff, bringing substantial likelihood of immediate and future irreparable harm due to the medical need and constitutional right of Plaintiff and similarly situated women to contraceptive care and coverage essential to women's health, safety, and equality."); *accord* Compl. ¶ 48. However, these conclusory statements offer no explanation of the theoretical "ongoing" harm.[6]

Furthermore, several speculative steps must occur before Ms. Campbell would be harmed. First, her employer would have to develop a sincerely held religious or moral objection to covering

---

[6] Although in some situations, "general factual allegations of injury resulting from the defendant's conduct may suffice," *Lujan*, 504 U.S. at 561, this is not a case where the court can "presume[] [that] general allegations embrace those specific facts necessary to support the claim." *Sierra Club v. Young Life Campaign, Inc.*, 176 F. Supp. 2d 1070, 1085 (D. Colo. 2001); *see also id.* at 1084. Ms. Campbell has not argued in general terms that her employer actually has or imminently will remove its coverage of contraceptives. Instead, she points only to the supposed "substantial likelihood of immediate and future irreparable harm," Compl. ¶ 54, caused by the Rules.

11

the contraceptives. Then, her employer would need to reverse course and decide to stop covering contraception *and* elect not to use the Rules' optional accommodation process, under which Ms. Campbell would continue to receive access to contraceptives without cost sharing.

For these reasons, Ms. Campbell's complaint must be dismissed as lacking standing. *Cf. Utah v. Babbitt*, 137 F.3d 1193, 1202 (10th Cir. 1998) ("Nor is the perceived importance of the asserted right a substitute for constitutional standing.").

### B. A Generalized Grievance Based on an Alleged Constitutional or Statutory Violation Is Insufficient.

Ms. Campbell seeks to raise claims under the Establishment Clause, Compl. ¶¶ 28-33; the Equal Protection guarantee of the Fifth Amendment, Compl. ¶¶ 34-43; and the Administrative Procedure Act (APA), Compl. ¶¶ 44-49, as well as for declaratory relief, Compl. ¶¶ 50-54. Ms. Campbell asserts, without elaboration, that she has been "directly harmed" by Defendants' alleged violations of each. *See, e.g.*, Compl. ¶¶ 32-33 ("Plaintiff is directly harmed by Defendants' violations of the First Amendment. . . . Defendants' violations cause ongoing harm to the Plaintiff."); *see also* Compl. ¶¶ 42-43, Compl. ¶¶ 48-49. These conclusory statements, like the rest of the Complaint, fail to allege any actual injury.

Even reading these statements in the light most favorable to Ms. Campbell, an implication that the Agencies' alleged violation of the Establishment Clause (or any other provision) in the abstract injured Ms. Campbell must fail as a generalized grievance insufficient to support standing.

Injury-in-fact requires an injury that is "concrete and particularized," *Summers*, 555 U.S. at 493-94, and affects her "in a personal and individual way," *Spokeo Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016) (citation omitted). In other words, a "generalized grievance," such as "every

citizen's interest in proper application of the Constitution and laws," is insufficient.[7] *Lujan*, 504 U.S. at 573, 575 (citation omitted); *cf. Baker v. Carr*, 369 U.S. 186, 204 (1962) (standing requires the plaintiff to "allege[] such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions").

Therefore, Ms. Campbell cannot establish standing by arguing that she is part of some broad and undifferentiated group of people who have been injured by witnessing an alleged violation of the Establishment Clause, equal protection guarantee, or APA provision supposedly at issue here. Ms. Campbell raises no claim of any personal injury that she has suffered here, and she therefore lacks standing.

### 2. The Court Should Dismiss The Claims Because They Are Not Ripe.

In addition to her lack of standing, Ms. Campbell's claims are also unripe. Ripeness doctrine "prevent[s] the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also . . . protect[s] the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Wyoming v. Zinke*, 871 F.3d 1133, 1141 (10th Cir. 2017) (citation omitted). Ripeness encompasses both constitutional and prudential elements. *Id.* For the same reasons that Ms. Campbell lacks standing, her claim lacks

---

[7] Ms. Campbell may not rely on the doctrine of taxpayer standing because she does not challenge "a direct and unambiguous congressional mandate" authorizing the government to spend funds in furtherance of religious belief. *Hein v. Freedom From Religion Found., Inc.*, 551 U.S. 587, 604 (2007) (plurality opinion).

constitutional ripeness. *See United States v. Supreme Court of N.M.*, 839 F.3d 888, 903 (10th Cir. 2016), *cert. denied*, 138 S. Ct. 78, 130 (2017).

Even if this Court were to determine that the constitutional requirements are met, the Court should dismiss Ms. Campbell's complaint as prudentially unripe. Prudential ripeness requires the court to consider (1) "the fitness of the issues raised . . . for judicial review" and (2) "the hardship to the parties from withholding review." *Awad v. Ziriax*, 670 F.3d 1111, 1124 (10th Cir. 2012) (citation omitted). Ms. Campbell's complaint is unripe under each factor.

The issues have not yet sharpened into the factual specificity that would aid review. Because no changes have been made to Ms. Campbell's insurance policy, the Court would be forced to guess what hypothetical changes *could* be made. For example, it is not clear on what grounds Ms. Campbell's employer—having publicly stated it will continue providing contraceptive coverage—would base any decision to end such coverage, and whether that reason would actually qualify under the Rules. The Court would also have to guess whether Ms. Campbell's employer would object to the particular contraceptive method Ms. Campbell uses. Also unknown is whether Ms. Campbell's employer, in the speculative scenario where it adopts a religious or moral objection, would use the optional accommodation process to maintain Ms. Campbell's access to contraceptives. The issues are thus not yet fit for judicial review.

As to the second element of the prudential hardship test, Ms. Campbell will suffer no hardship if this Court does not immediately review her case, because her position has not changed. As discussed *supra*, her employer has publicly stated its intent to continue covering contraception, and there is no evidence suggesting it will someday object. Even if that speculative change occurs, Ms. Campbell will have at least 30 days' notice of any reduction of health insurance coverage,

enabling her to seek review if and when any changes to her coverage are announced. This is far from the "direct and immediate dilemma" that courts have found creates a hardship. *New Mexicans for Bill Richardson v. Gonzales*, 64 F.3d 1495, 1499 (10th Cir. 1995). This Court should thus dismiss the complaint under the doctrine of prudential ripeness. *Cf. Wyoming v. Zinke*, 871 F.3d at 1141 ("Prudential ripeness acknowledges that the constraints of Article III may be insufficient to prevent the consideration of 'abstract disagreements over administrative policies.'" (quoting *Nat'l Park Hosp.*, 538 U.S. at 807)).

## CONCLUSION

For the reasons stated herein, this action should be dismissed.

Dated: December 18, 2017

Respectfully submitted,

CHAD A. READLER
Acting Assistant Attorney General

ETHAN P. DAVIS
Deputy Assistant Attorney General

ROBERT C. TROYER
United States Attorney

JOEL McELVAIN
Assistant Branch Director

/s/ Rebecca M. Kopplin
REBECCA M. KOPPLIN
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave. NW, Rm. 7217
Washington, D.C. 20001
Telephone: (202) 514-3953
Facsimile: (202) 616-8202
Email: Rebecca.M.Kopplin@usdoj.gov
*Counsel for Defendants*