UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 17-cv-2455-PAB-KHR

JESSICA CAMPBELL,

    Plaintiff,

v.

DONALD J. TRUMP, President of the United States;
ERIC D. HARGAN, Acting Secretary of Health and Human Services;
R. ALEXANDER ACOSTA, Secretary of Labor; and
STEVEN MNUCHIN, Secretary of the Treasury,

    Defendants.

---

**DEFENDANTS' REPLY SUPPORTING
DEFENDANTS' MOTION TO DISMISS**

---

## INTRODUCTION

Ms. Campbell's opposition to Defendants' motion to dismiss is most notable for what it does not say. Ms. Campbell does not contend that she has lost coverage for contraception. She does not argue that her employer—Colorado Academy—plans to drop coverage for contraception. She does not dispute that Colorado Academy has announced that it plans to *maintain* contraceptive coverage. She does not even claim that Colorado Academy has a religious or moral objection to providing contraceptive coverage, let alone an objection to covering the particular contraceptives that she uses. Instead, Ms. Campbell insists that she and "millions of similarly situated American women have standing" because "they live in fear of losing their birth control." Pl.'s Opp'n Defs.' Mot. Dismiss (Opp'n) at 2, ECF No. 12. That broad theory would force open the courthouse doors to what Ms. Campbell concedes would be "millions" of people working for employers who

currently cover contraception and have no plans to drop it. Without alleging any facts that would provide a basis for her fears, Ms. Campbell's speculative injuries are not the concrete, particularized, actual, and imminent injuries required by Article III. Nor can her claim of "procedural" standing through the Administrative Procedure Act (APA) overcome her lack of constitutional standing. Accordingly, Ms. Campbell has failed to carry her burden[1] of establishing this Court's jurisdiction and Defendants' motion to dismiss should be granted.[2]

## ARGUMENT

**1. Ms. Campbell Lacks Standing Because She Does Not Allege Any Injury in Fact**

As Ms. Campbell concedes, the Article III injury-in-fact inquiry requires her to demonstrate "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical[.]" *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). Indeed, she agrees that this examination must be "especially rigorous" in this

---

[1] Because the face of Ms. Campbell's complaint fails to allege an injury sufficient to support Article III standing, this Court may dismiss the complaint without oral argument or "discovery of external information," Opp'n at 7. Defendants request that the Court first consider their facial challenge to the insufficient allegations of Ms. Campbell's complaint, and only proceed to considering external evidence if necessary. Ms. Campbell, in any event, offers no reason to believe that any unspecified "external information" would improve her allegations of standing in any way.

[2] Defendants separately rebut Ms. Campbell's incorrect accusation of untimeliness in their Opposition to Ms. Campbell's Motion to Strike, *see* ECF No. 13. Contrary to Ms. Campbell's assertion, Opp'n at 1 n.2, Defendants' motion to dismiss complied with D.C.Colo.LCivR 7.1, because it stated the rules and statutes under which it was filed and recited the legal authority for dismissal. Ms. Campbell does not appear to have been confused with regard to the bases for Defendants' motion, as her opposition brief responds to Defendants' standing and ripeness arguments. In any event, Defendants here restate that this case must be dismissed due to the standing and ripeness requirements of Article III and for lack of subject-matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).

case because the Court is asked to strike down an action taken by the Executive Branch. Opp'n at 5; *cf. Raines v. Byrd*, 521 U.S. 811, 819-20 (1997). Ms. Campbell, however, is unable to demonstrate any injury that is actual or imminent, or that is concrete and particularized.

Ms. Campbell acknowledges that her employer currently providers her with contraceptive coverage, and does not dispute that it has announced that it intends to continue to do so. She bases her claim of standing instead on the speculative possibility that her employer could one day change its mind and reduce her coverage for contraceptives, noting that she "go[es] to bed each night knowing the next day her employer could withdraw necessary medical coverage." Opp'n at 6; *see also* Opp'n at 2 (stating that Ms. Campbell "live[s] in fear"). This conjectural concern cannot support standing because it is not sufficiently actual or imminent. An actual or imminent injury is one that is "certainly impending." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013). Ms. Campbell's fear of losing coverage in the future falls far below the "certainly impending" threshold; indeed, Ms. Campbell alleges no facts suggesting that any changes to her coverage will ever occur. Ms. Campbell's complaint is likewise devoid of any facts that would tend to show that the hypothetical chain of speculative events would actually injure her—for example, that her employer has a qualifying religious or moral exemption under the Rules, that her employer would not choose to use the Rules' optional accommodation process, or that her employer would object to the particular type of birth control that she uses.[3]

---

[3] As described in the preamble to the Religious Exemption Rule, many objecting employers object only to certain methods of contraception—the plaintiffs in *Burwell v. Hobby Lobby*, 134 S. Ct. 2751 (2014), for example, were willing to provide coverage for 14 of 18 FDA-approved contraceptive and sterilization procedures. *See* 82 Fed. Reg. 47,792, 47,801, 47,817, 47,823 (Oct. 13, 2017). Therefore it is by no means assured that, in the unlikely event that Ms. Campbell's employer reverses course and raises a religious objection, it would object to the particular method

Ms. Campbell's conjectures are precisely the type of speculation that is insufficient to create standing. As the Tenth Circuit stated, a plaintiff cannot merely "imagine circumstances in which [she] could be affected by the agency action." *Comm. to Save the Rio Hondo v. Lucero*, 102 F.3d 445, 449 (10th Cir. 1996); *see also Clapper*, 568 U.S. at 409 ("'Allegations of possible future injury' are not sufficient." (internal citation omitted)). Although Ms. Campbell asserts in a conclusory manner that there is "substantial likelihood of immediate and future irreparable harm," Opp'n at 8, she alleges no facts suggesting that any harm is likely to arise.

In addition to speculating that her employer could change its mind, Ms. Campbell takes a kitchen-sink approach[4] and lists several other types of injuries that she contends she may suffer. To the extent that Ms. Campbell describes particular types of harm, rather than generalities, *see* Opp'n at 6 (arguing that Ms. Campbell "is suffering and will suffer significant harm because of the Rules"), none suffices to establish standing. For example, she argues that "[i]n addition to health and safety, [her] financial security, liberty, and reproductive freedom, depend on her

---

of contraception that she uses.

[4] For example, Ms. Campbell devotes one section of her opposition to arguing that "financial harm," Opp'n at 7, or "federal agency action that imposes 'significant costs,'" Opp'n at 6 (quoting *Texas v. United States*, 809 F.3d 134, 155 (5th Cir. 2015) *aff'd by an equally divided court*, 136 S. Ct. 2271 (2016)), may satisfy the injury-in-fact requirement. Defendants, of course, do not dispute the general proposition that an appropriate financial harm can constitute an injury in fact. But Ms. Campbell has shown no present or certainly impending financial harm. Her complaint identifies no costs inflicted on her by the Rules. Because the only conceivable financial injury to Ms. Campbell would be predicated upon her losing contraceptive coverage, her potential future financial harms are even more speculative than the potential loss of contraceptive coverage.

Ms. Campbell also argues that non-economic harms may constitute injuries in fact. Opp'n at 12-13. Defendants also acknowledge that an appropriate non-economic harm can constitute an injury in fact. But Ms. Campbell has failed to allege any actual and imminent injury, economic or non-economic. She relies solely on conjecture that her employer will discontinue contraceptive coverage under her insurance plan.

continued access to reliable and affordable birth control." Opp'n at 7. These allegations all are premised on the hypothetical loss of access to contraceptive coverage. Because, as described above, Ms. Campbell's conjecture that she may someday lose contraceptive coverage cannot constitute an injury in fact, her allegations regarding the various repercussions that would arise if she were to lose coverage similarly cannot constitute an injury in fact. Likewise, to the extent that Ms. Campbell suggests that the hypothetical loss of coverage for contraception would impair her constitutional rights, these injuries are also too speculative to establish standing. *See* Opp'n at 13 (suggesting that Ms. Campbell's "liberty[] and reproductive freedom[] are directly harmed by Defendants' illegal and unconstitutional actions").[5]

Ms. Campbell also suggests that she may have a "spiritual stake" in invalidating the Rules. Opp'n at 12-13. A mere disagreement with a policy—no matter how heartfelt—cannot support standing, or else the doctrine would not serve its function of limiting the judicial power to resolving concrete disputes. *See Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 485–86 (1982) ("Although respondents claim that the Constitution has been violated, they claim nothing else. They fail to identify any personal injury suffered by them as a consequence of the alleged constitutional error, other than the psychological consequence presumably produced by observation of conduct with which one disagrees. That is not an injury

---

[5] Ms. Campbell does not cite any cases concluding that the Rules violate any person's constitutional rights, nor are Defendants aware of any such cases. *Cf.* Op. at 19, *Pennsylvania v. Trump*, No. 2:17-cv-4540 (E.D. Pa. Oct. 11, 2017), ECF No. 59 (the court "finds it unnecessary, at this juncture, to proceed to the constitutional issues"); *see generally* Order & Op., *California v. Hargan*, No. 4:17-cv-5783 (N.D. Cal. Nov. 1, 2017), ECF No. 105 (discussing the APA without reaching claims of constitutional injuries).

sufficient to confer standing under Art. III, even though the disagreement is phrased in constitutional terms."); *cf.* Opp'n at 3-4 (arguing that the Rules violate the First and Fifth Amendments). The case Ms. Campbell cites is discussing *School District of Abington Township v. Schempp*, 374 U.S. 203 (1963), in which the plaintiffs had a "spiritual stake" in the actual exposure of their children to Bible readings in school, not in challenging a regulation which had never affected them.

Furthermore, Ms. Campbell repeatedly references the purported injuries suffered by "millions of other American women." Opp'n at 4, *cf.* Opp'n at 2, 7, 9, 10. Such women are not parties to this case, and any alleged injuries to them accordingly cannot establish Ms. Campbell's standing in this case. *Cf. Spokeo, Inc. v. Robins,* 136 S. Ct. 1540, 1547 n.6 (2016) ("That a suit may be a class action . . . adds nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong." (internal quotation marks and citations omitted)). Ms. Campbell cannot show that she personally suffers an injury-in-fact that is traceable to the Rules, and she may not rely on the possibility that other people may be so injured to meet her burden.

Finally, Ms. Campbell argues that the deprivation of coverage for contraceptives—if it occurred—would be an "irreparable" harm. Opp'n at 8, 13. But a hypothetical irreparable injury is still hypothetical. This inquiry is not relevant to the present motion to dismiss, because Ms. Campbell has not shown any cognizable injury at all, let alone an irreparable one.

None of Ms. Campbell's claimed injuries, therefore, can meet the minimum requirements of Article III standing, and this Court should therefore dismiss this action for lack of subject-matter

jurisdiction. This outcome, which Ms. Campbell criticizes as a "wait and see" approach, Opp'n at 13, is simply what the Constitution demands—that the federal judiciary hear only cases with the "concrete adverseness which sharpens the presentation of issues." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 583 (1992) (internal quotation marks and citations omitted).

### 2. Nor Can Ms. Campbell's Purported "Procedural Injury" Overcome a Lack of Constitutional Standing

Ms. Campbell's attempt to rely on a procedural injury under the APA is irrelevant here because no procedural injury can substitute for the irreducible injury-in-fact requirement of Article III.[6] "Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing." *Spokeo,* 136 S. Ct. at 1547-48 (quoting *Raines*, 521 U.S. at 820 n.3). Ms. Campbell argues that she was injured by the Agencies' alleged failure to follow the procedural requirements of the APA. Opp'n at 6-9. However, "deprivation of a procedural right without some concrete interest that is affected by the deprivation—a procedural right *in vacuo*—is insufficient to create Article III standing." *Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009); *see also Spokeo* at 1549 ("For that reason, [the plaintiff] could not, for example, allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III."). Indeed, Ms. Campbell's proposed approach would be tantamount to exempting APA claims from Article III's requirements for standing.

---

[6] The question of procedural injury may be relevant in determining whether a plaintiff satisfies the requirements to bring suit under a particular statute, or has "statutory standing." *Cf.* Opp'n at 9-11. Defendants' motion, however, challenges this Court's subject-matter jurisdiction based on Ms. Campbell's lack of Article III standing. Ms. Campbell's discussion of "statutory standing," Opp'n at 9-11, is therefore not relevant.

Ms. Campbell's own restatement of procedural standing demonstrates the same point. As she acknowledges, a plaintiff seeking to show procedural standing must "show that the procedures in question are designed to protect some threatened concrete interest of [his or hers] that is the ultimate basis of [his or her] standing." Opp'n at 6 (quoting *Citizens for a Better Forestry v. U.S. Dep't of Agric.*, 341 F.3d 961, 969 (9th Cir. 2003)). All of Ms. Campbell's claimed injuries are too speculative to form such a "concrete interest," for the reasons previously discussed. Similarly, Ms. Campbell acknowledges a plaintiff must "establish the reasonable probability of the challenged action's threat to [his or her] concrete interest." Opp'n at 6 (quoting *Citizens for a Better Forestry*, 341 F.3d at 969) (alteration in original). But she has established no such reasonable probability, as previously discussed. "The Supreme Court 'has repeatedly held that an asserted right to have the Government act in accordance with [the] law is not sufficient, standing alone, to confer jurisdiction on a federal court,'" *State of Utah v. Babbitt*, 137 F.3d 1193, 1205 (10th Cir. 1998) (alteration in original) (quoting *Allen v. Wright*, 468 U.S. 737, 754 (1984), *abrogated on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377 (2014)), and yet that is precisely what Ms. Campbell seeks here.

### 3. The Conclusions of the *Pennsylvania* and *California* Cases Do Not Support Ms. Campbell's Standing

Ms. Campbell argues that she has standing because courts in other jurisdictions have found that the Commonwealth of Pennsylvania and the State of California have standing to challenge the Rules. Opp'n at 11. As an initial matter, neither of these opinions binds this Court, and Defendants contend that both were wrongly decided. But even the *Pennsylvania* and *California* courts' erroneous determinations on standing do not support Ms. Campbell's claim. Ms. Campbell is a single individual—a dramatic contrast to the five states who brought suit in *California*, 1st Am.

Compl., *California v. Hargan*, No. 4:17-cv-5783 (N.D. Cal. Nov. 1, 2017), ECF No. 24, or the Commonwealth of Pennsylvania, Compl., *Pennsylvania v. Trump*, No. 2:17-cv-4540 (E.D. Pa. Oct. 11, 2017), ECF No. 1. And that contrast makes all the difference, as both the *Pennsylvania* and *California* courts erroneously applied a unique standing inquiry that applies only to *states*, not individuals. *See* Op. at 10, *Pennsylvania*, ECF No. 59 ("[A] State is entitled to special solicitude in [the] standing analysis . . . ." (second alteration in original) (internal quotation marks and citations omitted)); Order & Op. at 12, *California*, ECF No. 105 (same). Moreover, the *Pennsylvania* court relied on estimates of women in Pennsylvania who, as a group, could lose coverage. Op. at 14, *Pennsylvania*; *cf.* Order & Op. at 12, *California* (relying on states' ability to, under certain conditions, assert the interests of their "residents in general"). Such an approach is unavailing to this lawsuit in Colorado, where Ms. Campbell must demonstrate that *she in particular* will be harmed.

### 4. Ms. Campbell's Claims Are Also Not Ripe

Ms. Campbell offers no specific defense of the ripeness of her claims except relying on the recent decisions in *Pennsylvania* and *California*, which are, as discussed previously, inapposite. *See* Opp'n at 12. As the discussion of the speculative nature of Ms. Campbell's injury demonstrates, this case lacks the factual specificity (among other topics, the nature of the employer's hypothetical objections, the employer's hypothetical choice to take or not to take the accommodation, and the types of contraception hypothetically objected to by the employer are all as yet unknown) that would assist the Court in its review. And, although Ms. Campbell states without support that "the Rules allow her employer to deny her access to birth control, unilaterally, at any time," Opp'n at 3, she offers no rebuttal of the fact that she will receive either 30 or 60 days

of notice in the event that her employer changes its mind and decides to change her coverage (nor, of course, could her employer claim the exemption unless it had a qualifying religious or moral objection). Defs.' Mot. Dismiss at 10, 14, ECF No. 9 (citing 82 Fed. Reg. at 47,813). Ms. Campbell accordingly has not shown that she would suffer hardship if review of her claims were to be postponed until her claims have ripened into a concrete dispute.

## **CONCLUSION**

For the reasons stated herein, this action should be dismissed.

Dated: January 19, 2018

Respectfully submitted,

CHAD A. READLER
Acting Assistant Attorney General

ETHAN P. DAVIS
Deputy Assistant Attorney General

ROBERT C. TROYER
United States Attorney

JOEL McELVAIN
Assistant Branch Director

/s/ Rebecca M. Kopplin
REBECCA M. KOPPLIN
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave. NW, Rm. 7217
Washington, D.C. 20001
Telephone: (202) 514-3953
Facsimile: (202) 616-8202
Email: Rebecca.M.Kopplin@usdoj.gov
*Counsel for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on this day, January 19, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following email addresses:

| | |
|---|---|
| alan.kennedy-shaffer@aya.yale.edu | (Representing Plaintiff) |
| joeljudd@joeljudd.com | (Representing Plaintiff) |
| rebecca.m.kopplin@usdoj.gov | (Representing Defendants) |

Dated: January 19, 2018                                       /s/ Rebecca M. Kopplin

                                                                              REBECCA M. KOPPLIN